IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES FITZPATRICK, #S09536, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES, INC., SIDDIQUI, NURSE MOLDENHAUER, CRAIN, NURSE ZIMMER, NURSE DEAMOND, DIRECTOR JEFFREYS, WARDEN WILLIS, JOHN DOE 1, and JOHN DOE 2, <br><br> Defendants. | Case No. 20-cv-01218-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

     Plaintiff Charles Fitzpatrick, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Fitzpatrick claims that Defendants have delayed and denied treatment for a lump in his abdomen and associated pain. He is suing all Defendants in their individual and official capacities, and he seeks monetary damages and injunctive relief.

     The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this

juncture, the factual allegations of the pro se Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Fitzpatrick alleges that beginning in November 2019, he began complaining to medical staff of pain and a lump on the left side of his abdomen. (Doc. 1, p. 13, 19, 28). At some point, he was examined by Nurse Moldenhauer, Nurse Zimmer, Dr. Siddiqui, Nurse Deamond, and Nurse Tripp, who diagnosed Fitzpatrick as having a hernia. (*Id.* at p. 15, 21). On March 26, 2020, x-rays were ordered for further assessment of the lump. (*Id.* at p. 17). That same day, Moldenhauer and Zimmer sought approval for an ultrasound to be performed on his abdomen by submitting his case to John Doe 1 and John Doe 2 for collegial review. (*Id.* at p. 15). Fitzpatrick did not receive the ultrasound until two months later, on May 20, 2020, and the x-ray was not taken until June 18, 2020. (*Id.* at p. 17, 18). During that time, he was in excruciating pain. (*Id.* at p. 16, 17, 18). He complained to Nurse Moldenhauer, Dr. Siddiqui, Nurse Zimmer, and Nurse Deamond that he was in pain and being denied stronger pain medication and access to adequate medical care and treatment. (*Id.* at p. 18). His complaints were ignored. Defendants did nothing to stop his pain or help him manage it.

On May 28, 2020, Fitzpatrick was seen by Dr. Siddiqui. (Doc. 1, p. 17-18). During the appointment, Fitzpatrick told Dr. Siddiqui that he had been waiting for over two months for an x-ray. (*Id.* at p. 18). Dr. Siddiqui responded that there was not enough staff to treat everyone, "so we have to cancel services because we can't see everybody and then we get backed up because we cancelled the passes, so be lucky that you're getting seen at all." (*Id.*).

After receiving the results of the ultrasound, Nurse Moldenhauer, Dr. Siddiqui, Nurse Zimmer, Nurse Deamond, and Nurse Tripp concluded that they were wrong in their diagnosis, and Fitzpatrick did not have a hernia. (Doc. 1, p. 19, 21). Nurse Moldenhauer, Nurse Deamond, and

Dr. Caldwell determined that "something was wrong" with his stomach. Dr. Caldwell examined Fitzpatrick and determined he should be sent to a specialist to receive an upper GI barium. (*Id.*). Dr. Caldwell submitted a request for Fitzpatrick to receive an upper GI barium to collegial review for approval. (*Id.* at p. 20). The request was denied by John Doe 1 and John Doe 2, and they recommended an alternative treatment plan that cost less. (*Id.*).

Fitzpatrick continued to complain that he was in excruciating pain, and told Defendants that the pain medication prescribed was not working. (Doc. 1, p. 22). He wrote a grievance and was told that he would be called back in two months for a follow-up appointment. (*Id.* at p. 22). The alternative treatment planned purposed by John Doe 1 and John Doe 2 did not help him.

Fitzpatrick claims that he has been denied and delayed adequate care due to cost saving policies implemented by Wexford Health Sources, Inc. ("Wexford"). He asserts Wexford has a policy of understaffing the health care unit at Menard. (Doc. 1, p. 4). There are only two doctors and three nurse practitioners to see and diagnose over 2,000 inmates at Menard. Because of an insufficient number of staff, sick call passes and request slips are ignored or canceled. The inmate rule book provides that once an inmate submits a sick call request, the inmate is to be seen by a nurse at nurse sick call within three days. (*Id.* at p. 4-5). Fitzpatrick submitted eight sick call slips and waited two months before he was seen by medical staff. (*Id.* at p. 5). It then took eight months for him to receive diagnostic testing, the ultrasound and x-ray, and for medical staff to determine he did not have a hernia. (*Id.* at p. 19).

Understaffing has not only caused delay in care but, misdiagnosis. (Doc. 1, p. 5-6). Nurses, who are only supposed to assess inmates' medical complaints, are now making medical diagnoses, which is outside their job description and their medical expertise. (*Id.* at p. 6).

Wexford also does not adequately train medical staff or provide the necessary machinery, technology, and equipment so that they can provide constitutional care. (*Id.* at p. 7, 9). Fitzpatrick

was misdiagnosed with a hernia because Defendants lacked the necessary medical expertise, knowledge, and equipment needed to adequately diagnose and treat his condition. (*Id.* at p. 7, 15).

Furthermore, Wexford has implemented the collegial review process, which denies care to inmates based on cost. (Doc. 1, p. 7-8). Because of this process, Fitzpatrick's ultrasound was delayed and the GI barium, recommended by his treating physician, was denied. (*Id.* at p. 7).

Finally, Wexford has a policy of only allowing medical staff to administer Tylenol and ibuprofen for pain, even when these medicines are not effective. (Doc. 1, p. 14).

### PRELIMINARY DISMISSALS

Fitzpatrick asserts allegations against Nurse Tripp and Dr. Caldwell in the Complaint, but they are not named in the case caption as defendants. The Court will not treat parties not listed in the caption as defendants, and any claims against them are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

### DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following three counts:

> **Count 1:** Eighth Amendment deliberate indifference claim against Siddiqui, Moldenhauer, Crain, Zimmer, Deamond, John Doe 1, John Doe 2, Jeffreys, and Willis for denying and delaying Fitzpatrick adequate medical treatment for the lump in his abdomen and associated pain.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Wexford for denying and delaying Fitzpatrick adequate medical treatment for the lump in his abdomen and associated pain.
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Jeffreys and Willis for allowing understaffing of the health care unit at Menard resulting in Fitzpatrick and other inmates receiving inadequate medical care.

The parties and the Court will use these designations in all future pleadings and orders, unless

otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.** *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

### Count 1

Fitzpatrick alleges that complaints about his pain and the lump on the left side of his abdomen were repeatedly ignored by Defendants. (Doc. 1, p. 13). Once he was seen by Dr. Siddiqui, Nurse Moldenhauer, Nurse Zimmer, and Nurse Deamond, he was misdiagnosed, and then he waited months for an ultrasound and x-ray. After receiving the results of these tests, he continued to receive inadequate care when the request for a GI barium was denied, and Defendants persisted in treating Fitzpatrick with an ineffective alternative treatment plan. All the while, Fitzpatrick has been in severe pain and only treated with Tylenol and ibuprofen. Furthermore, he has experienced delays in receiving medical care because of a decision by IDOC Director Jeffreys, Warden Willis, and Dr. Siddiqui to cancel all medical call passes. (*Id.* at p. 14-15).

Fitzpatrick claims that Healthcare Administrator Crain, IDOC Director Jeffreys, and Warden Willis were made aware that he personally was not receiving adequate medical care through grievances and letters, and they failed to intervene to ensure he received proper treatment. (Doc. 1, p. 12, 13). These are sufficient allegations for Count 1 to proceed against Siddiqui, Moldenhauer, Zimmer, Deamond, Crain, Jeffreys, and Willis. *See Perez v. Fenoglio,* 792 F. 3d 768, 781 (7th Cir. 2015).

Count 1 will also proceed against John Doe 1 and John Doe 2 for delaying the approval of the ultrasound and denying the request for a GI barium through the collegial review process.

**Count 2**

Fitzpatrick states a colorable claim against Wexford. He claims that because of Wexford's cost saving policies and practices, including understaffing the healthcare unit, failing to adequately train and supervise existing staff, the use of the collegial review process to deny medical care, and limiting pain medicine to only Tylenol and ibuprofen, his medical appointments were repeatedly delayed or canceled, he was misdiagnosed, and his pain was not effectively treated. Count 2 will therefore proceed against Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.,* 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

**Count 3**

Fitzpatrick alleges that Director Jeffreys and Warden Willis knew that the healthcare unit was understaffed through grievances he filed and filed by other inmates and "deliberately turned a blind eye." (Doc. 1, p. 12). *See Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983) ("systematic deficiencies in staffing, facilities, or procedures [that] make unnecessary suffering inevitable" may demonstrate deliberate indifference). Count 3 will proceed against Jeffreys and Willis.

### MOTION FOR APPOINTMENT OF COUNSEL

Fitzpatrick has filed a Motion for Appointment of Counsel (Doc. 2), which is **DENIED.** [1] He discloses several unsuccessful efforts to contact attorneys via written correspondence. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action pro se, Fitzpatrick indicates that he has no legal education and has had assistance in writing the Complaint, the motion for counsel, and his grievances. He also

---

[1] In evaluating the Motion for Appointment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

expresses concern about his ability to handle discovery and responding to dispositive motions once filed by Defendants. Nonetheless, the Court finds that Fitzpatrick can proceed pro se, at least for now. With the assistance of other inmates, his Complaint has survived preliminary review, and he has been able to relay information to and file motions with the Court. Other than a lack of legal training and medical knowledge, which is not unique to him as a pro se litigant, Fitzpatrick has not provided any information for the Court to conclude he lacks the capabilities to prosecute his claims on his own at this time. Once discovery has commenced, if he has significant difficulty, he may refile his motion.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Siddiqui, Moldenhauer, Crain, Zimmer, Deamond, John Doe 1, John Doe 2, Jeffreys, and Willis. **COUNT 2** will proceed against Wexford. **COUNT 3** will proceed against Jeffreys and Willis.

Because Fitzpatrick's claims involve the alleged denial of medical care, the Clerk of Court is further **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The motion for recruitment of counsel (Doc. 2) is **DENIED without prejudice.**

The Clerk of Court shall prepare for **Wexford, Siddiqui, Moldenhauer, Crain, Zimmer, Deamond, Jeffreys, Willis,** and **John Doe 1** and **John Doe 2** (once identified): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant,

and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Fitzpatrick, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the unknown defendants until such time as Fitzpatrick has identified them by name in a properly filed motion for substitution. Guidelines and dates will be set for identifying the John Does once Defendants have filed their Answers to the Complaint. Fitzpatrick is **ADVISED** that it is his responsibility to provide the Court with the name and service addresses for these individuals.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Fitzpatrick, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Fitzpatrick is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of

prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED:**   September 27, 2021

                                          *s/Stephen McGlynn*
                                          **STEPHEN P. MCGLYNN**
                                          **United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.