IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARLES FITZPATRICK, #S09536,** | |
| **Plaintiff,** | |
| v. | Case No. 20-cv-01218-SPM |
| **WEXFORD HEALTH SOURCES, INC., MOHAMMED SIDDIQUI, MICHAEL MOLDENHAUER, ANGELA CRAIN, MARY JO ZIMMER, ALISA DEARMOND,[1] ROB JEFFREYS, ANTHONY WILLS, and JOHN DOES 1 and 2 (Collegial Review).[2]** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Charles Fitzpatrick, who is an inmate at Menard Correctional Center ("Menard") brought this action pursuant to 42 U.S.C. § 1983 claiming that Defendants delayed and denied treatment for a painful lump in his abdomen. (Doc. 1). Defendants Dearmond, Moldenhauer, Siddiqui, Wexford Health Sources, Inc. ("Wexford"), and Zimmer (hereinafter "the Wexford Defendants") filed a Motion for Summary Judgment claiming Plaintiff failed to exhaust his administrative remedies (Doc. 46). Defendants Jeffreys, Wills, and Crain (hereinafter "the IDOC Defendants") also filed a motion raising failure to exhaust (Doc. 53). Plaintiff responded to both motions, respectively, at Docs. 57 and 62. For the reasons below, both motions will be denied.

---

[1] Alisa Dearmond's surname is misspelled as "Deamond" on the docket sheet; the Clerk will be directed to correct the error. (Doc. 46).
[2] Plaintiff has never filed a motion to substitute the actual names of the John Doe Defendants pursuant to the instructions in the Initial Scheduling and Discovery Order (Doc. 44, p. 3), so these parties will be dismissed from the action.

## BACKGROUND

Plaintiff submitted his Complaint on November 9, 2020. (Doc. 1). He asserts that he began complaining of his symptoms to medical staff in November 2019. He was examined by Defendants Moldenhauer, Zimmer, Siddiqui, and Dearmond at various times during 2020. Diagnostic testing was delayed, and it was ultimately determined that Plaintiff did not have a hernia as initially suspected. However, the reason for his symptoms has never been diagnosed and his pain persists. Plaintiff asserts that Wexford's failure to adequately train staff, persistent understaffing, and its collegial review process contributed to the delay in care and treatment. Upon initial review, the Court allowed Plaintiff to proceed on the following claims:

> **Count 1:** Eighth Amendment deliberate indifference claim against Siddiqui, Moldenhauer, Crain, Zimmer, Dearmond, John Doe 1, John Doe 2, Jeffreys, and Wills for denying and delaying Fitzpatrick adequate medical treatment for the lump in his abdomen and associated pain.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Wexford for denying and delaying Fitzpatrick adequate medical treatment for the lump in his abdomen and associated pain.
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Jeffreys and Wills for allowing understaffing of the health care unit at Menard resulting in Fitzpatrick and other inmates receiving inadequate medical care.

(Doc. 11, pp. 4-6).

The Wexford Defendants' Motion for Summary Judgment notes that Plaintiff submitted a relevant emergency grievance (No. 330-8-20) on August 26, 2020. (Doc. 47-2, pp. 12-13). It was processed as an emergency and the Grievance Officer responded on October 19, 2020, recommending the grievance be deemed moot because Plaintiff had received some treatment and agreed (on September 1, 2020) to an Alternative Treatment Plan for lab work and a follow up in two months. (Doc. 47-2, pp. 10-11). The Wexford Defendants argue that Plaintiff did not exhaust this grievance because he never appealed it to the Administrative Review Board ("ARB"). (Doc.

47, pp. 3-4).³ In support of their motion, the Wexford Defendants include copies of the grievance, the Grievance Officer's response, and Plaintiff's Cumulative Counseling Summary. (Doc. 47-2, pp. 10-13; Doc. 47-1, p. 4). They also include a log from the ARB ("IGRV" log) showing the only appeal received from Plaintiff dates back to 2017 on an unrelated matter. (Doc. 47-3, p. 8). The Wexford Defendants further argue that the content of Grievance No. 330-8-20 was insufficient to exhaust Plaintiff's claims because it did not mention his allegation that Siddiqui cancelled all medical passes or that Wexford had policies of understaffing, failing to train staff, using the collegial review process to deny care, and limiting pain medications to only Tylenol and ibuprofen. (Doc. 47, p. 10). Finally, they question the credibility of Plaintiff's claim that he submitted two earlier unreturned grievances. (Doc. 47, pp. 11-12).

Plaintiff responds that he did appeal Grievance No. 330-8-20 to the ARB by signing it and mailing it to the ARB.⁴ (Doc. 57, p. 3). He further explains that he placed the grievance appeal directed to the ARB in the bars of his cell for a correctional officer to pick up, because he was unable to access the grievance collection box located on another floor. (Doc. 57, pp. 19, 25). Plaintiff also asserts that before he filed Grievance No. 330-8-20, he had filed two earlier emergency grievances about the same abdominal issues and lack of treatment (on January 6, 2020, and March 11, 2020), but never received a response even when he wrote follow-up letters to the warden, counselor, and IDOC Director Jeffreys inquiring as to their status. (Doc. 57, pp. 3, 5, 15-18, 25). He explains he placed those grievances in the bars of his cell for pickup and in the grievance "black box" and believes they were intentionally mishandled. (Doc. 57, p. 25). Based

---

³ The motion points out that Plaintiff submitted two unrelated grievances in October 2020 (Nos. 66-10-20 and 148-10-20). (Doc. 47, pp. 4-5). Neither relates to Plaintiff's claims herein, so the Court will not discuss them further.
⁴ The "Offender's Appeal to the Director" section on Plaintiff's copy of the grievance response is blank; he has not submitted any documentation of the date he sent his appeal to the ARB. (Doc. 57, p. 13).

on these actions, Plaintiff argues that he exhausted the grievance procedure that was available to him.

The IDOC Defendants also focus on Grievance No. 330-8-20, asserting that Plaintiff failed to appeal it to the ARB. (Doc. 54, pp. 2, 5; Doc. 54-2). Their exhibits contain no indication that Plaintiff followed up on the two prior grievances he claims to have filed, and they argue Plaintiff's follow-up letters contain no allegations against Defendant Crain, and do not raise the issue of understaffing against Wills, thus would not suffice to exhaust those claims even if he did submit them. (Doc. 54, pp. 6-7; Doc. 54-3).

Countering the IDOC Defendants' motion, Plaintiff asserts again that he took all the necessary steps to exhaust his grievances; he never got a response to his two earlier grievances of January and March 2020 or to his inquiry letters, and never received a response from the ARB to Grievance No. 330-8-20. (Doc. 62, pp. 2, 4-5).[5]

## LEGAL STANDARDS

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The

---

[5] Plaintiff also attaches grievances filed in December 2021 and April 2022 during the pendency of this lawsuit, in which he claims that his abdominal pain still has not been diagnosed or adequately treated, arguing that these demonstrate he brought his medical issues to the IDOC Defendants' attention. (Doc. 62, pp. 6, 24-30). Because these were filed *after* Plaintiff brought this suit, they are not relevant to the question of whether Plaintiff exhausted his administrative remedies before he filed suit.

4

exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *Reid v Balota*, 962 F.3d 325, 329 (7th Cir. 2020) ("an administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance"); *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013).

As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. If an inmate is unsatisfied with the outcome at the facility, he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures do allow for an inmate to file an emergency grievance; to do so, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender." 20 ILL. ADMIN. CODE § 504.840(a). After such a

5

determination, processing of the grievance is expedited, as is any appeal. 20 ILL. ADMIN. CODE § 504.840(b); § 504.850(f).

### ANALYSIS

As an initial matter, the Court finds that the content of Grievance No. 330-8-20, which alleges that Wexford, the nurses/nurse practitioners (identified in the grievance response as Moldenhauer, Zimmer, and Dearmond), and Siddiqui failed to adequately treat Plaintiff's persistent abdominal pain, delayed diagnostic testing, and failed to perform further evaluation to determine the cause of his symptoms is sufficient to support Plaintiff's claims against Defendants Siddiqui, Moldenhauer, Zimmer, Dearmond, Jeffreys, and Wills in Count 1, and against Wexford in Count 2. As well, Plaintiff's May 13, 2020 letter to Jeffreys and his March 30, 2020 letter to Warden Wills, written to inquire about Plaintiff's January 6 and March 11, 2020 grievances, adequately informed Jeffreys and Wills of his claim that the health care unit was understaffed in support of Count 3. It is undisputed that neither Jeffreys or Wills responded to these two letters of inquiry. (Doc. 57, pp. 15-18; Doc. 62, pp. 14-17).

Nonetheless, the question remains whether Plaintiff followed the required steps to administratively exhaust his grievances, and several material facts relating to exhaustion remain in dispute. The only recorded grievance relevant to this lawsuit is Grievance No. 330-8-20, filed on August 26, 2020, but the parties dispute whether Plaintiff exhausted it by appealing it to the ARB before filing this suit. Also disputed is whether Plaintiff filed emergency grievances on or about January 6, 2020, and March 11, 2020, and whether the lack of any response to them rendered the grievance process unavailable. The ARB's grievance log supports Defendants' contention that Grievance No. 330-8-20 was not appealed to that body, and the Cumulative Counseling Summary contains no record of Plaintiff's January and March 2020 grievances. However, Plaintiff's

Affidavit[6] asserts that he filed those earlier grievances and letters inquiring on their status, and that he appealed Grievance No. 330-8-20 to the ARB. (Doc. 57, p. 25; Doc. 62, p. 31).

Plaintiff's assertion regarding his ARB appeal is similar to the circumstances in *Dole*, where the Seventh Circuit found that an inmate had done all he could to exhaust administrative remedies by placing a timely appeal to the ARB in his chuckhole to be mailed. 438 F.3d at 810-11. In *Dole,* the inmate's mail to the ARB was apparently lost, but the Court found that the error was a misstep by the prison system, not the inmate, so the inmate could not be faulted for a failure to exhaust. The loss of Plaintiff's ARB appeal would appear to be the fault of the prison system rather than an error by Plaintiff; the same may be said about the grievances Plaintiff claims to have filed earlier in 2020 which were apparently lost.

These disputed facts about whether Plaintiff took all the necessary steps to exhaust Grievance No. 330-8-20, and whether he was thwarted in his two earlier attempts to grieve the delays and deficiencies in treating his abdominal pain, make summary judgment inappropriate.

Based on the record before the Court, summary judgment must be denied. Resolving the question of whether Plaintiff procedurally exhausted his grievances will require a hearing as explained in *Pavey*, 544 F.3d 739. If Defendants want to continue to pursue the affirmative defense of failure to exhaust administrative remedies, they must request a *Pavey* hearing.

If a hearing is requested, the issues the Court would consider are:

1) Did Plaintiff file a timely appeal of Grievance No. 330-8-20 after the response dated October 21, 2020?

2) If Plaintiff timely appealed Grievance No. 330-8-20, were the contents of that grievance sufficient to exhaust the claim in Count 1 against Defendant Crain?

3) Alternatively, did Plaintiff file grievances in January and/or March of 2020 that were

---

[6] A party may oppose summary judgment with an affidavit if it is based on personal knowledge. FED. R. CIV. P. 56(c)(4). Plaintiff's affidavit in support of summary judgment is based on his personal knowledge, and he attested to its accuracy under penalty of perjury in accordance with 28 U.S.C. § 1746.

somehow lost or mishandled, but related to his claims in this lawsuit?

The parties will be expected to present evidence only on these issues, if a *Pavey* hearing is held.

If Defendants do not request a *Pavey* hearing, a merits discovery schedule will be set, or the parties may request that the case be referred for a settlement conference or mediation.

## DISPOSITION

The Motions for Summary Judgment on the issue of exhaustion of administrative remedies (Docs. 46, 53) are **DENIED**. Defendants must file a notice within fourteen days (14) of this Order either withdrawing the affirmative defense of exhaustion or requesting a *Pavey* hearing.

Defendants John Doe 1 and John Doe 2 (Collegial Review) are **DISMISSED** from the action because Plaintiff failed to file a motion to substitute their actual names by the April 22, 2022 deadline (Doc. 44) and did not request an extension to do so. The Clerk is **DIRECTED** to terminate the John Doe Defendants on the docket, and to correct the spelling of Defendant Dearmond's surname in accordance with footnote 1.

**IT IS SO ORDERED.**

**DATED: October 28, 2022**

*s/ Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### Notice to Plaintiff

This Order is an initial decision that you have presented enough evidence to refute the defendants' arguments about the exhaustion of administrative remedies for your claims in this lawsuit. The defendants now have the choice to withdraw their exhaustion argument, or to ask for a hearing to give more evidence about this issue. If the defendants withdraw the defense, you will get a scheduling order for next steps on the merits of your claims. If the defendants ask for a hearing, you will get an order that will explain next steps to prepare for the hearing. Any hearing will be limited strictly to the "disputes of material fact" specifically identified in this Order. You will not need to present evidence on anything other than what is specifically identified. If a hearing is scheduled, you will be allowed to present evidence and testimony on your own behalf. Details

about a future hearing will be provided by future order if one is scheduled. You do not need to do anything now. The Defendants have 14 days to file a motion about what they want to do. You will get a copy of that motion, and you will get further instructions once the Defendants have filed their motion. Please be aware that there can be delays in the mailing of copies, so you should wait at least 30 days before asking for the status of this matter.