IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARLES FITZPATRICK, #S09536,**<br><br>      Plaintiff,<br><br>v.<br><br>**WEXFORD HEALTH SOURCES, INC., MOHAMMED SIDDIQUI, MICHAEL MOLDENHAUER, ANGELA CRAIN, MARY JO ZIMMER, ALISA DEARMOND, ROB JEFFREYS, and ANTHONY WILLS,**<br><br>      Defendants. | Case No. 20-cv-01218-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on Defendants' motions requesting a *Pavey* hearing[1] (Docs. 64, 65). Defendants requested the hearing following the Court's preliminary denial of their motions for summary judgment (Docs. 46, 53)[2] on the issue of failure to exhaust administrative remedies (Doc. 63).

The Court held an evidentiary hearing on the issue of exhaustion on January 19, 2023. The Court subsequently allowed supplementation of the record regarding Defendants Wills' status as Warden or Acting Warden as of March 2020, and Plaintiff's original letters to the Warden and Defendant Jeffreys (Docs. 70-74).

For the reasons set forth below, summary judgment is granted for Defendant Crain and

---

[1] *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).
[2] The "Wexford Defendants," Dearmond, Moldenhauer, Siddiqui, Zimmer, and Wexford Health Sources, Inc. jointly filed the motion at Doc. 46 asserting Plaintiff failed to exhaust his administrative remedies before filing suit. The motion at Doc. 53 was jointly filed by Defendants Jeffreys, Wills, and Crain (the "IDOC Defendants"). Plaintiff responded to both motions (Docs. 57, 62).

1

denied for the other Defendants.

**BACKGROUND**

Plaintiff Charles Fitzpatrick is an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"). His civil rights Complaint, filed on November 9, 2020 (Doc. 1), alleges that Defendants were deliberately indifferent to his complaints of a lump in his abdomen and persistent abdominal pain beginning in November 2019. Defendants Moldenhauer, Zimmer, Siddiqui, and Dearmond examined Plaintiff at various times in 2020. Diagnostic testing was delayed. After some time, it was determined that Plaintiff did not have a hernia, however, he never received a diagnosis or effective treatment. Plaintiff asserts that understaffing, inadequately trained staff, and the collegial review process delayed treatment for his symptoms. Upon initial review of the Complaint, Plaintiff was allowed to proceed on the following claims:

> **Count 1:** Eighth Amendment deliberate indifference claim against Siddiqui, Moldenhauer, Crain, Zimmer, Dearmond, Jeffreys, and Wills for denying and delaying Fitzpatrick adequate medical treatment for the lump in his abdomen and associated pain.[3]
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Wexford for denying and delaying Fitzpatrick adequate medical treatment for the lump in his abdomen and associated pain.
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Jeffreys and Wills for allowing understaffing of the health care unit at Menard resulting in Fitzpatrick and other inmates receiving inadequate medical care.

(Doc. 11, pp. 4-6).

***I. Emergency Grievance No. 330-8-20 – Submitted August 26, 2020***

This grievance pertains to Plaintiff's claims against all the Defendants. The parties agree that Plaintiff submitted this grievance, which was processed as an emergency. (Doc. 47-2, pp. 12-

---

[3] The Court dismissed two John Doe Defendants from Count 1 after Plaintiff failed to identify them by name. (Doc. 63).

13). The Grievance Officer responded on October 19, 2020, recommending the grievance be deemed moot because Plaintiff had received some treatment and agreed (on September 1, 2020) to an Alternative Treatment Plan for lab work and a follow up in two months. (Doc. 47-2, pp. 10-11).

In dispute is whether Plaintiff appealed this grievance to the Administrative Review Board ("ARB"). Plaintiff's Cumulative Counseling Summary contains no record of an appeal (Doc. 47-2, pp. 10-13) and the ARB ("IGRV" log) shows no appeals were received from Plaintiff since 2017. (Doc. 47-3, p. 8). Plaintiff maintains that he appealed Grievance No. 330-8-20 to the ARB by signing it and placing it in the bars of his cell for mailing to the ARB. (Doc. 57, pp. 3, 19, 25). He explains that he was forced to submit some grievances by placing them in the cell bars because he was not allowed to go downstairs to the grievance box and officers did not bring the box to inmates in their cells. (Doc. 57, p. 25).

The Court previously found that the content of Grievance No. 330-8-20, which alleges that Wexford, the nurses/nurse practitioners (identified in the grievance response as Moldenhauer, Zimmer, and Dearmond), and Siddiqui failed to adequately treat Plaintiff's persistent abdominal pain, delayed diagnostic testing, and failed to perform further evaluation to determine the cause of his symptoms, is sufficient to support Plaintiff's claims against Defendants Siddiqui, Moldenhauer, Zimmer, Dearmond, Jeffreys, and Wills in Count 1, and against Wexford in Count 2. (Doc. 63, p. 6). The Court did not determine whether its content was sufficient to exhaust the claim against Crain in Count 1. (Doc. 63, p. 7).

## II. Alleged Emergency Grievances Submitted January 6, 2020 & March 11, 2020, and Follow-Up Letters

These pertain to Plaintiff's claims against all the Defendants. Plaintiff claims that before he filed Grievance No. 330-8-20, he had filed two earlier emergency grievances in January and

March 2020 about the same abdominal issues and lack of treatment, but never received a response even when he wrote follow-up letters to the Warden, counselor, and IDOC Director Jeffreys inquiring about their status. (Doc. 57, pp. 3, 5, 15-18, 25). Plaintiff submitted copies of follow-up letters inquiring about the emergency grievances, written to the "Warden-CAO" on March 30, 2020 (Doc. 57, pp. 17-18) and to Jeffreys on May 13, 2020 (Doc. 57, pp. 15-16). Plaintiff's March 30, 2020 letter to the Warden states he had placed the January 2020 and March 2020 emergency grievances in the grievance "black box." (Doc. 57, p. 17). This letter did not detail Plaintiff's medical condition other than to state he needed stronger pain medication; he also complained about Wexford understaffing the health care unit. Plaintiff's May 13, 2020 letter to Jeffreys noted that he had suffered bad stomach pain since November 2019, had a lump in his abdomen, and had not yet had the ultrasound that was ordered in March or April 2020. (Doc. 57, p. 15).

It is undisputed that Plaintiff never received a response to the January 2020 and March 2020 emergency grievances. The IDOC Defendants dispute that Plaintiff ever submitted them. It is undisputed that neither Wills or Jeffreys responded to Plaintiff's inquiry letters dated March 30, 2020 and May 13, 2020, but these Defendants do not admit to having received them.

The Court previously found that the contents of Plaintiff's March 30, 2020 letter to the Warden and his May 13, 2020 letter to Jeffreys, written to inquire about Plaintiff's January 6, 2020 and March 11, 2020 grievances, adequately informed Jeffreys and Wills of his claim that the health care unit was understaffed in support of Count 3. (Doc. 63, p. 6).

LEGAL STANDARDS

*I. Summary Judgment*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

*See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). On summary judgment, the district court's role is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary judgment on the issue of exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey v. Conley*, 544 F.3d at 739-41. The Seventh Circuit in *Pavey* held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are to be determined by the judge, not a jury. *Pavey*, 544 at 740-41. A summary judgment motion on exhaustion grounds typically requires a hearing to decide any contested issues regarding exhaustion, and a judge may make limited findings at that time. *Id*. at 742.

### II. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). "The exhaustion requirem ent is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

For a prisoner to properly exhaust their administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly

5

take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

While strict compliance with the exhaustion requirement is the rule in this Circuit, an inmate is only required to exhaust administrative remedies that are actually available to him. *Ross v. Blake*, 578 U.S. 632, 642 (2016); *Wallace v. Baldwin*, 55 F.4th 535, 542-44 (7th Cir. 2022). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 578 U.S. at 642; *Reid v Balota*, 962 F.3d 325, 329 (7th Cir. 2020) ("an administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance"); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

The United States Supreme Court has adopted a definition of "available" that means "capable of use for the accomplishment of a purpose" and that which is "accessible or may be obtained." *See Booth v. Churner*, 532 U.S. 731, 737-38 (2001) (internal quotations and citations omitted). In this context, an inmate is required to exhaust "those, but only those, grievance

6

procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (citing *Booth*, 532 U.S. at 738). For example, an administrative procedure is unavailable when it operates as a simple dead end, despite what the regulations or guidance materials may state. *Ross*, 578 U.S. at 643 (citing *Booth*, 532 U.S. at 736, 738) ("[W]here the relevant administrative procedure lacks authority to provide relief," the inmate has "nothing to exhaust."). This commonly occurs when an administrative official has apparent authority and refuses to exercise it or when a grievance handbook directs an inmate to submit his grievance to an administrative office that disclaims any capacity to consider the grievance. *Id.* The unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

### III. Grievance Procedures

As an inmate in the custody of the IDOC, Plaintiff was required to follow the grievance procedure set forth in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. The procedures direct an inmate to file a grievance first with the Counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to a Grievance Officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The Grievance Officer must submit their findings to the Chief

Administrative Officer ("CAO") within two months after receiving the grievance. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then reviews the findings and recommendation of the Grievance Officer and issues a written decision to the inmate. *Id.* If the inmate is not satisfied with the response, they can file an appeal with the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days after the date of the decision by the CAO. *Id.* Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023-24.

The grievance procedures do allow for an inmate to file an emergency grievance; to do so, the inmate must send the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and direct it to be handled on an emergency basis. 20 ILL. ADMIN. CODE §504.840(a). Upon a determination that the matter is an emergency, Processing of the grievance is expedited, as is an appeal. 20 ILL. ADMIN. CODE §504.840(b); § 504.850(f). If the CAO determines the grievance "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE §504.840(c).

## FACTUAL ISSUES BEFORE THE COURT AT THE EVIDENTIARY HEARING

As set forth by the Court in the Order denying Defendants' summary judgment motions and directing them to request a *Pavey* hearing (Doc. 63, pp. 7-8), the following disputed issues relating to whether Plaintiff has exhausted his claims and whether the grievance process was available to him must be determined in an evidentiary hearing:

1) Did Plaintiff file a timely appeal of Grievance No. 330-8-20 after the response dated October 21, 2020?

2) If Plaintiff timely appealed Grievance No. 330-8-20, were the contents of that grievance sufficient to exhaust the claim in Count 1 against Defendant Crain?

> 3) Alternatively, did Plaintiff file grievances in January and/or March of 2020 that were somehow lost or mishandled, but related to his claims in this lawsuit?

Defendants Jeffreys, Wills, and Crain ask the Court to make factual findings on all three issues identified above, as well as to determine whether Plaintiff's assertions regarding grievances that do not appear in IDOC's records are credible. (Doc. 64, pp. 1-2). Defendants Wexford, Moldenhauer, Siddiqui, Zimmer, and Dearmond request the Court to make factual findings on issues 1 and 3 above. (Doc. 65, p. 2).

## DISCUSSION

### *I. Testimony at Evidentiary Hearing*

Plaintiff testified that he submitted emergency grievances on January 6, 2020 and March 11, 2020 which failed to yield any response. (No copies of those emergency grievances exist.) He sent his March 30, 2020 letter to the Warden inquiring about those grievances by placing the letter in the bars of his cell for pickup, after which it should have been deposited in a box for the Warden. Plaintiff could not directly access the Warden's box on March 30, 2020 because there was a lockdown. Plaintiff sent his May 13, 2020 letter to Jeffreys inquiring about the January 2020 and March 2020 emergency grievances by sealing it in an envelope with a money voucher for postage, and placing it in the bars of his cell for pickup by an officer due to the COVID-19 protocol at the time.

Plaintiff's Grievance No. 330-8-21 (August 26, 2020) did not identify Defendant Crain by name. Plaintiff never saw Crain personally regarding his medical complaints but he asserts she would have received his medical request slips. He knew that Crain was the health care administrator at the time. He submitted his appeal of Grievance No. 330-8-21 to the ARB by placing it in his cell bars in an envelope with a money voucher, the same day he received it back with the Warden's signature – October 22, 2020. He filed the instant lawsuit on November 9, 2020.

In response to questioning about the handwriting in the Complaint being different from that in later documents, Plaintiff explained that he had help from another inmate to write up his Complaint because Plaintiff's right arm is impaired from an injury. That person copied Plaintiff's original handwritten letters to the Warden and Jeffreys so it would look "something like decent altogether." Later on, Plaintiff wrote documents on his own while he was in segregation and was unable to get help from the other inmate.

## II. Supplementary Material

Defendants Crain, Jeffreys, and Wills' supplement states that Jeffreys announced on March 31, 2020 that Defendant Wills would become Acting Warden at Menard effective April 1, 2020 (Doc. 71). Prior to that date, the Acting Warden was Alex Jones. *Id.* As such, they argued that Defendant Wills would not have been the person to receive Plaintiff's inquiry letter of March 30, 2020 to the "Warden." Plaintiff responded, asserting that Defendant Wills had responsibility for the Health Care Unit and grievance issues as an assistant Warden at Menard prior to his appointment as Acting Warden, and that other staff knew Wills was the Acting Warden before Jeffreys' letter was issued (Doc. 73). Defendants replied, arguing that Plaintiff's response should be disregarded because he failed to raise his new arguments before the evidentiary hearing and they are unavailing. (Doc. 74).

Plaintiff's supplement was to contain the two original letters (in his own handwriting) that he wrote to the Warden and to Defendant Jeffreys inquiring about the status of his January 6, 2020 and March 11, 2020 emergency grievances. Plaintiff attached two identical copies of the March 30, 2020 letter to the Warden, but in apparent error, did not attach a copy of his original letter to Jeffreys. (Doc. 72, pp. 2-3).

### *III. Did Plaintiff Timely Appeal the October 21, 2020 Denial of Grievance No. 330-8-20 to the ARB?*

The Court finds Plaintiff's testimony that he timely submitted his appeal of this grievance to the ARB to be credible. He employed the only procedure available to him at the time – placing the envelope and a money voucher in the bars of his cell for an officer to retrieve and send on to its destination. He did this the same day he received the denial of his grievance (October 21, 2020) because he was angry. Once Plaintiff's envelope was picked up from the bars of his cell, Plaintiff had no control over what became of it.

Defendants do not dispute that the cell-bar method was used by inmates to submit grievances and/or appeals while they were confined to their cells during the COVID-19 pandemic. They argue that because no record exists of Plaintiff having submitted an appeal, he must not have done so. The Court notes, however, that if an envelope was lost, misplaced, or destroyed after it left Plaintiff's hands, no record is likely to exist.

The Court credits Plaintiff's explanation of his attempt to exhaust Grievance No. 330-8-20 by appealing it to the ARB, and finds that the grievance procedure was unavailable to Plaintiff because prison officials failed to transmit his appeal to the ARB.[4] As such, Plaintiff is excused from the exhaustion requirement as to Count 1 of this action against Defendants Siddiqui, Moldenhauer, Zimmer, Dearmond, Jeffreys, and Wills, and in Count 2 against Wexford.

### *IV. Was Grievance No. 330-8-20 Sufficient to Exhaust the Claim in Count 1 Against Defendant Crain?*

Plaintiff's Grievance No. 330-8-20 complains that "health care/Wexford" failed to treat his

---

[4] The Court acknowledges the IDOC Defendants' argument that Plaintiff filed suit prematurely only 18 days after submitting his appeal to the ARB, which left insufficient time for the ARB to respond. If the ARB had received and ruled on the appeal after the filing of this case, the suit would be subject to dismissal. But because Plaintiff's appeal never reached its destination, the procedure was unavailable to him and the exhaustion requirement is lifted.

abdominal pain. Plaintiff admitted that he knew Crain was the health care administrator at the time he wrote this grievance, yet he did not refer to her by name or by her job title in the grievance. He never saw Crain personally regarding his medical issues. In contrast, Plaintiff's grievance did identify Defendant Siddiqui by name and described Plaintiff's contacts with the providers he identified as a nurse and nurse practitioner. As to Crain, Grievance No. 330-8-20 fails to meet the requirement that a grievance must contain the name of each person involved in the complaint, or "as much descriptive information about the individual as possible." 20 ILL. ADMIN. CODE § 504.810(c). His reference to "health care/Wexford" is not sufficient to implicate Crain in the alleged misconduct that prompted the grievance and this lawsuit.

Grievance No. 330-8-20 did not exhaust Plaintiff's claim in Count 1 against Defendant Crain. Therefore, Crain is entitled to summary judgment in her favor and will be dismissed as a Defendant herein.

### V. Did Plaintiff file grievances in January and/or March of 2020 that were somehow lost or mishandled, but related to his claims in this lawsuit?

The resolution of this question will determine whether Plaintiff can proceed with his claim in Count 3 against Jeffreys and Wills for understaffing the health care unit. The Court finds Plaintiff's testimony to be credible and accepts his assertions that he filed the January and March 2020 emergency grievances by placing them in the grievance box, and that he sent follow-up letters to the Warden on March 30, 2020 and to Jeffreys on May 13, 2020, inquiring about the status of those emergency grievances. (As noted above, the contents of those two letters contained sufficient information to support Plaintiff's claim that the health care unit was understaffed.) Plaintiff adequately explained the differences in handwriting between the inquiry letters submitted with his Complaint, which were hand-copied by the inmate who helped Plaintiff by writing up his pleading, and the original letters and other documents written by Plaintiff himself.

The IDOC Defendants argued at the *Pavey* hearing that because Defendant Wills was not yet the Acting Warden on March 30, 2020, when Plaintiff submitted his inquiry letter of that date, the claim against Wills in Count 3 must fail. Wills became the Acting Warden on April 1, 2020, two days after Plaintiff wrote the letter to the Warden. However, there was no testimony regarding how quickly a letter to the Warden might be delivered to the Warden's office, when sent by the method Plaintiff described. While Plaintiff's letter to the Warden could have been handed over to former Acting Warden Jones on March 30 or March 31, 2020, it is at least equally plausible that this letter would not have been delivered until April 1, 2020, when Wills assumed his Acting Warden duties. Plaintiff placed the letter in his cell bars on March 30, 2020, after which an officer should have placed the letter in a box for the Warden. At some point thereafter, the letter should have been delivered to its destination. Defendants have not met their burden of proof on this disputed factual issue. In the absence of evidence showing that Plaintiff's March 30, 2020 letter would have been received by the previous Acting Warden *before* April 1, 2020 (when Wills' Acting Warden appointment took effect), Wills is not entitled to summary judgment based on Defendants' supplementary material.

The Court finds that the grievance procedure was unavailable to Plaintiff with regards to his January 2020 and March 2020 emergency grievances, and the same is true for his letters to Wills and Jeffreys inquiring about those grievances. Summary judgment will be denied as to these two Defendants.

### DISPOSITION

**IT IS THEREFORE ORDERED** that Defendants' Motions for Hearing (Docs. 64, 65) are **GRANTED**; the hearing has been completed as reflected herein.

The Court concludes that Plaintiff Fitzpatrick exhausted his administrative remedies as to

his claims against Defendants Dearmond, Moldenhauer, Siddiqui, Zimmer, and Wexford Health Sources, Inc. (See Doc. 46); he also exhausted his administrative remedies as to his claims against Defendants Jeffreys and Wills (See Doc. 53). However, Plaintiff failed to exhaust his administrative remedies as to the claim against Crain (See Doc. 53). Accordingly, summary judgment is **GRANTED** in favor of Defendant Crain, and she is **DISMISSED** from the action without prejudice.

Count 1 will proceed against Siddiqui, Moldenhauer, Zimmer, Dearmond, Jeffreys, and Wills. Count 2 will proceed against Wexford. Count 3 will proceed against Jeffreys and Wills.

The matter of exhaustion of administrative remedies now being resolved, the stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's remaining claims. The Court will enter a separate scheduling order to set forth discovery and dispositive motion deadlines.

**IT IS SO ORDERED.**

**DATED: June 29, 2023**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**United States District Judge**